IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOSEPH M. STONE, )
)
Petitioner, )
)
) NO. 3:04-0314
) JUDGE HAYNES
WAYNE BRANDON, Warden, )
)
Respondent. )

**MEMORANDUM**

Petitioner, Joseph Stone, a state prisoner, filed this petition under 28 U.S.C. 2241 et seq. seeking the writ of habeas corpus to set aside his convictions for one theft and six burglaries for which he received a sentence of twenty (20) years. Petitioner's claims are for ineffective assistance of counsel, an invalid guilty plea hearing before the state trial court under Boykin v. Alabama, 395 U.S. 238 (1969) and a coerced confession that resulted in his convictions and sentence. The Court appointed counsel for the Petitioner, and his counsel filed an amended petition.

Before the Court are the parties' cross motions for summary judgment. (Docket Entry Nos. 17 and 22). Respondent argues that Petitioner's claim for an alleged coerced confession is procedurally defaulted and the state court's rulings on his other claims satisfy the standards in Williams v. Taylor, 529 U.S. 362, 405 (2000). In his cross motion for summary judgment, Petitioner concedes that his involuntary confession claim is procedurally defaulted, but Petitioner asserts his other claims were fairly presented to the state courts and the state record demonstrates the merits of those claims.

## A. Review of the State Record

Stone was charged with seven counts of theft and six counts of burglary. (Docket Entry No. 10, Attachment thereto at Addendum 1A, p.1). On March 9, 2000, Petitioner pled guilty to one theft count and six burglary counts under a negotiated plea agreement. Id. at Addendum 1A, pp. 17-25. Under the plea agreement, the remaining six theft counts were to be dismissed. Id. The State record also reflects that the plea agreement provided that the trial court would determine his sentence. (Docket Entry No.10, Addendum 1A at p. 17).

At the sentencing hearing on May 10, 2000, the state trial court sentenced Stone as a Range III persistent offender and imposed a sentence of ten years each on the six burglary counts and five years on one theft count, with two of the burglary sentences to be consecutive and the remaining sentences concurrent, for an "effective" sentence of 20 years. Id. at pp. 19-26.

Stone filed a direct appeal to challenge his consecutive sentence under state law, but the Tennessee Court of Criminal Appeals affirmed. State v. Stone, No. M2000-0 1321-CCA-R3-CD, 2001 WL 363987 (Tenn. Crim. App. Apr. 12, 2001). The Petitioner filed his application for permission to appeal (Docket Entry No. 10, at Addendum 6), but the Tennessee Supreme Court denied his application. Id. at Addendum 7.

Petitioner then filed a petition for post-conviction relief asserting claims of ineffective assistance of counsel and an involuntary plea. An evidentiary hearing was held, and after the hearing, the trial court denied the petition. Id. at Addendum No. 8. On appeal, the Tennessee Court of Criminal Appeals affirmed. In his post-conviction appeal, Stone presented the following claim:

> Whether Petitioner Stone's trial counsel was constitutionally deficient in his representation, undermining the voluntariness of his guilty plea.

2

Id. at Addendum 9 at p. 2. In his brief, Stone's specific contentions were that "[i]n the case sub judice, the record reflects that Mr. Horst's representation was constitutionally deficient. Mr. Horst plainly failed to communicate with Petitioner Stone." Id. at p. 13. In addition, Stone challenged the adequacy of the trial court's plea colloquy with him.

> [T]he plea colloquy is perhaps the best evidence of the confusion embraced by the plea petition. The record reflects that Petitioner Stone read the plea Petition himself. When the trial court reviewed the Petition, it had difficulty deciphering what the four (4) corners of the document purportedly detailed. Obviously, if an experienced trial judge cannot independently reconcile the terms of the plea agreement, then a criminal defendant with an eighth (8th) grade education and severely limited reading comprehension skills cannot possibly be expected to understand the plea (regardless of his criminal history).

Id. at 17.

In its brief, the State argued that "[a] review of the transcript of the guilty plea hearing makes plain that the petitioner understood the nature and consequences of his plea." Id. at Addendum 11 at p. 8.

The Tennessee Court of Criminal Appeals made the following findings of fact[1] on Stone's claims in his post-conviction appeal:

> The petitioner's wife, Tabitha Stone, and his mother, Betty Ann Stone, both testified at the post-conviction hearing. According to these witnesses, the petitioner attempted to contact trial counsel unsuccessfully numerous times throughout the course of representation. During the eleven-month period, the petitioner met with trial counsel for approximately an hour and a half. On the morning of March 9, 2000, just prior to the petitioner's guilty plea hearing, counsel handed the petitioner a document to sign in the hallway outside of the courtroom. <u>Counsel told the petitioner that it was a rejection of the State's offer of twelve years. The witnesses testified that counsel told the petitioner to reject the offer because he could probably get between four and six years if he submitted to</u>

---

[1] State appellate court opinion findings can constitute factual findings under 28 U.S.C. § 2254(d). Sumner v. Mata, 449 U.S. 539, 546-47 (1981).

3

<u>the trial court for sentencing</u>. Although the petitioner read the document, the witnesses did not think he understood it. According to them, counsel told the petitioner to agree to everything the judge asked. If not, she would "throw the book at him." The petitioner's mother said that the petitioner understood his three prior plea agreements but that he did not understand what he was doing this time.

The petitioner also testified at the post-conviction hearing. According to the petitioner, he first met with counsel in June of 1999. At that time, counsel told him that he might get a sentence of Community Corrections or probation since he had not been convicted in the past ten years. The petitioner attempted to contact counsel several times, but he was not successful. The petitioner did come into contact with counsel at a local hospital. Counsel did not want to discuss the petitioner's case at that time, and he told the petitioner that he would contact him when counsel felt better. The petitioner stated that he drove to counsel's office approximately five months later to speak with him. Counsel told the petitioner that he had not had time to look at his case thus far. The petitioner made contact with counsel over the phone in October of 1999. However, he said that counsel hung up on him without discussing his case. According to the petitioner, the next time he communicated with counsel was a few days before his March 9, 2000 plea hearing. Counsel told the petitioner that he would talk to him on the day of the plea hearing. On that day, the petitioner met with counsel in the hallway outside the courtroom. <u>Counsel told him that the State had made an offer of twelve years. He told the petitioner that he should reject the offer of twelve years because he could receive from two to six years instead. According to the petitioner, counsel told him to agree to everything the judge asked</u>. The petitioner said that he understood the plea agreements he had entered into in the past but that he did not understand this one. The petitioner testified that, if he had known he could get a twenty-year sentence, he would have insisted on going to trial. However, he did remember the judge saying that he could be sentenced to as many as thirty-six years.

The petitioner's trial counsel testified that he had been practicing law for approximately sixteen years. He spent the first six or eight years as a district attorney, and his current practice consisted of approximately ninety to ninety-five percent criminal defense work. In regard to the petitioner's case, counsel took discovery from the State, familiarized himself with the charges, and received information about the petitioner's prior criminal history. According to counsel, he had no problems communicating with the petitioner and documented approximately five or six meetings and discussions. Counsel did not recall how many times he met with the petitioner face-to-face, but he did remember talking with the petitioner over the phone on a number of occasions. The petitioner never complained to counsel about his representation. Counsel testified that, on February 10, 2000, he received an offer from the State to settle and immediately

relayed it to the petitioner. According to counsel's notes, which he referred to at the hearing, the petitioner agreed to accept the State's offer on February 18, 2000. He stated that the decision to accept the plea agreement was not made in the hallway prior to the plea hearing and that he never told the petitioner to "just agree" with what the judge asked. Counsel acknowledged that the plea agreement was rather complicated and "difficult to follow." Counsel said that it was usual for there to be a period of time in which he does not communicate with a defendant because it takes about six months from the preliminary hearing until indictment.

* * *

In the petitioner's claim of ineffective assistance of counsel, he alleges that counsel failed to properly communicate with the petitioner. The post-conviction court credited the testimony of counsel and found that he had produced notes and testified that he spoke with the petitioner several times, both in person and on the phone. The court also found that, even if counsel met with the petitioner for only one or two hours, the petitioner had not shown that counsel's performance was so deficient as to constitute ineffective assistance of counsel. We do not find that the evidence preponderates against the post-conviction court's findings and conclude that the petitioner has failed to show prejudice by any alleged failure to communicate. The record does not demonstrate that any additional communication would have altered the petitioner's decision to enter a guilty plea. This issue is without merit.

Additionally, the petitioner alleges ineffective assistance because of counsel's failure to interview or conduct an investigation into alibi witnesses. As the post-conviction court correctly pointed out, the only way to establish the prejudicial value of a witness's testimony is to present that witness at the post-conviction hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim.App. 1990). "It is elementary that neither a trial judge nor an appellate court can speculate or guess on the question of ... what a witness's testimony might have been if introduced by defense counsel." *Id.* The petitioner did not present any of the alibi witnesses at the post-conviction hearing; therefore, he has failed to establish any prejudice. This issue is without merit.

<u>In addition to ineffective assistance of counsel, the petitioner claims that his guilty pleas were unknowing and involuntary.</u>

The post-conviction court found that the guilty pleas entered by the petitioner were knowing and voluntary based on several factors. First, the petitioner had entered into plea agreements on multi-count indictments on at least three prior occasions. Also, the plea transcript reveals that he was aware of the nature and consequences of the guilty plea. The petitioner indicated that he had read the plea agreement and had no questions. The testimony of trial counsel, credited by the

5

> post-conviction court, indicated that the petitioner had agreed to accept the plea on February 18, 2000, approximately three weeks before the plea hearing. At the plea hearing, the judge told the petitioner that he could be getting a maximum sentence of thirty-six years. The petitioner stated that he understood the consequences. The petitioner told the trial court that he had read the plea agreement and did not have any questions. The trial judge asked, "if you were confused, would you make sure you got it cleared up?", to which the petitioner responded, "Oh, yes." The evidence does not preponderate against the post-conviction court's findings. The petitioner has failed to demonstrate that the guilty pleas were unknowing and involuntary. This issue is without merit.

Stone v. State, No. M2003-00731-CCA-R3-PC, 2004 WL 300123 at *1-2, 3 (Tenn. Ct. Crim. App. May 24, 2004) (emphasis added)

Before the plea hearing, Horst handwrote the material terms of the agreement in the plea petition. Those verbatim handwritten terms are as follows:

— Plea of guilty to Counts 1, 2, 4, 6, 8, 10, 12 [six burglary counts plus go-cart larceny count].

— Dismiss Counts 3, 5, 7, 9, 11, 13 [redundant larceny charges].

— Sentencing Hearing with following understanding: Defendant will be sentenced on counts 2, 4, 6 [three burglary counts]. <u>No prior agreement as to manner or length of sentence.</u> Is pleading as range III.

— All other charges will run concurrent with Counts 2, 4, 6.

(Docket Entry No. 10, Addendum 1A at 17) (emphasis added). The handwritten plea petition is silent on whether the sentences on Counts 2, 4 and 6 would be imposed consecutive.

It is undisputed that Brent Horst, Stone's counsel, did not read the plea petition to Stone and deferred to Stone's reading of the petition. Horst believes that, on February 18, 2000, he explained the material terms of the offer to Stone such that he understood them. The record reflects that Stone has an eighth-grade education. The Respondent notes that on three prior occasions, Stone pled guilty to multi-count indictments in Davidson County. (Addenda 8a, 17, 18, 20).

6

At his plea hearing, confusion arose on whether Stone's sentences would run concurrent or consecutive. Initially, the trial judge stated and Stone agreed that of the offenses to which Stone was pleading, the sentences "are all concurrent." (Docket Entry No. 10, Addendum 2, Plea Hearing Transcript at p. 5). Stone's counsel then informed the state trial court that three of the convictions were to be served either consecutively or concurrently at the trial court's discretion and with a maximum sentence of 36 years. Id. at pp. 2, 5 and 6. The trial judge then stated the terms of the bargain were that "three of them [the convictions] would run concurrent[ly]." Id. at p. 6. The plea agreement, however, provided that four sentences would be concurrent: "all other charges will run concurrent with charges 2, 4 and 6." (Docket Entry No. 10, Addendum 1A at p. 000017).

Prior to sentencing hearing, another assistant district attorney prepared the judgment sheets for the sentencing, and those documents reflected that all seven sentences would be concurrent. The trial court stated: "It looks like everything is concurrent in the judgment forms." (Docket Entry No. 10, Addendum 3 Sentencing Transcript at p. 3). The prosecutor and Stone's counsel agreed and told the trial judge that she could impose three sentences consecutively and the remainder would be concurrent. Id. at pp. 5-6. The Respondent and the Tennessee Court of Criminal Appeals refer to one of the state trial judge's questions and Stone's answer thereto:

> The Court: You don't have to have any questions, you may know more about this system than the rest of us do. But the point of the matter is, if you were confused, would you make sure you got it cleared up?
>
> Stone: Oh, yes.

Id. at Addendum No. 2, Plea Transcript at p. 9.

7

At Stone's post-conviction hearing, Horst, Stone's counsel at the plea and sentencing hearings, admitted that he did not advice Stone on whether to accept the State's plea offer.

> Q. So in all probability, your advice was to reject the 12-year offer?
>
> A. No. Whenever I have an offer, whether it is one offer, take it or leave it, or some options like General Gunn gave, I don't want to say never, but I rarely, rarely try to lead a client in one direction or another. I mean, there have been situations, but I don't think this would have been one of them, so I don't want to say I suggested one over the other.

(Docket Entry No. 10, Volume 2, Addendum, 8A Post-Conviction Transcript at pp. 59-60).

Horst could not specifically recall giving any particular advice at the meeting where he conveyed the plea offer, but was "pretty sure that [it] was a face-to-face meeting." Id. at 58. Horst added, "I told him what the options were and I told him to think it over and let me know." Id. at 49.

## B. CONCLUSIONS OF LAW

### 1. Procedural Default

Petitioner concedes that his coerced confession claim is procedurally defaulted and does not challenge its default. Thus, the Court does not consider that claim. Respondent, also argues that Stone failed to include the "specific factual basis" of his Boykin claim in his post-conviction appeal and such failure bars any relief on that claim.

In addition to his ineffective assistance claims, Petitioner's state appellate brief argued that his plea was not knowing and voluntary. (Petitioner's Post-Conviction Brief to Tennessee Court of Criminal Appeals, Addendum 9 at 15-18). The Tennessee Court of Criminal Appeals opinion expressly reflects that: "In addition to ineffective assistance of counsel, the petitioner claims that his guilty pleas were unknowing and involuntary." Stone, 2004 WL 300123 at *4.

8

In reaching its decision, the Tennessee Court of Criminal Appeals also cited Boykin. Id.

The exhaustion and procedural default doctrines are "designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971). (internal quotation marks omitted). Under Vasquez v. Hillery, 474 U.S. 254, 257 (1986), federal courts "do not require a word-for-word replication of the State claim in the habeas corpus petition in order to address the merits therein, only that the petitioner 'fairly present' the substance of each of the federal constitutional claims to the state courts." Under Vasquez, a claim can be construed if the claim does not "fundamentally alter the legal claim already considered by the state courts." Id. at 260. In Covington v. Mills, 110 Fed. Appx. 663 (6th Cir. 2004), the Sixth Circuit referred to the fact and argument sections of Petitioner's state court brief, to conclude that claims were fairly presented and were not procedurally defaulted.

Given the argument in the Petitioner's post-conviction appellate brief, the Tennessee Court of Criminal Appeals' statement that "in addition to the ineffective assistance of counsel, the petitioner claims that his guilty pleas were unknowing and involuntary," and that Court's citation to Boykin, this Court concludes that Petitioner's Boykin claim for an inadequate plea colloquy was fairly presented to the state courts and is proper to consider for habeas relief.

### B. Conclusions of Law

Petitioner's habeas petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Lindh v. Murphy, 521 U.S. 320, 336 (1997). Under the AEDPA, federal courts may not grant habeas relief for claims adjudicated on their merits in a state court proceeding, unless that state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding:

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000), the Supreme Court stated that a state court judgment is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." In such instances, the Supreme Court held that a federal habeas court may grant a writ. <u>Id.</u> The Supreme Court interpreted the language "clearly established Federal law, as determined by the Supreme Court of the United States" as referring to "holdings as opposed to dicta" of its decisions at the time of the state court decision. <u>Id.</u> at 412. Moreover, the relevant analysis is "to apply a rule of law that was clearly established at the time [the Petitioner's] state court conviction became final." <u>Id.</u> at 390, <u>accord</u>, <u>Joshua v. Dewitt</u>, 341 F.3d 430, 436 (6th Cir. 2003). In <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002), the Court reiterated that AEDPA modified a federal court's role in reviewing state prisoner applications "in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under the law."

Under the "unreasonable application" clause, the Supreme Court stated that a state court judgment results in an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decision but unreasonably applies [that principle] to the facts of the particular case." <u>Id.</u> at 694. The district court "must presume that all determinations of factual issues made by the state court are correct

10

unless the defendant can rebut that presumption by clear and convincing evidence." Mitchell v. Mason, 325 F.3d 732, 737-38 (6th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)).

Yet, the Supreme Court explained that a state court's application of clearly established federal law must be "objectively unreasonable," and a federal habeas court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 409, 411. A state court's application of federal law is unreasonable and habeas relief may be granted if the "state court decision is so clearly incorrect that it would not be debatable among reasonable jurists." Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)).

### 1. Ineffective Assistance of Counsel

Petitioner's first claim is for the alleged ineffectiveness of his counsel. In Mitchell, the Sixth Circuit identified two broad categories of ineffective assistance of counsel claims: (1) the actual or effective absence of counsel at a critical stage of the proceeding for which a presumption of prejudice arises; and (2) counsel whose performance was deficient on specific issues and that deficiency was demonstrably prejudicial to the defendant. As that Court explained:

> In United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Supreme Court held that an appeals court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.". . . In Williams, the Supreme Court confirmed the vitality of this "per se" approach, noting that while the Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test for ineffective assistance of counsel, requiring proof of deficient performance and prejudice, provides guidance for resolving virtually all ineffective assistance of counsel claims, there are "a few situations in which prejudice may be presumed."

11

> Williams, 529 U.S. at 391 . . . (citing Strickland, 466 U.S. at 692, 104 S.Ct. 2052). We have recently applied the presumption-of-prejudice test to a claim of ineffective assistance of counsel. Olden, 224 F.3d at 568 (prejudice is presumed when counsel is absent during prosecution's presentation of evidence that implicates defendant because such absence occurred during "critical stage" of trial).

325 F.3d at 740.

Within the first category are three types of presumptive ineffectiveness:

> The first is the complete denial of counsel, in which "the accused is denied the presence of counsel at 'a critical stage.'" Bell, 122 S.Ct. at 1851 (quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039). The second is when counsel "'entirely fails to subject the prosecution's case to meaningful adversarial testing.'" Id. (quoting Cronic, 466 U.S. at 659, 104 S.Ct. 2039). The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance.

Id. at 742.

Here, from the review of the state court record, the Court concludes that Stone's ineffective assistance of counsel claims fall within the Cronic category because, in effect, Horst did not provide any advice to Stone on the merits nor the acceptance of the State's plea offer. In any event, the Strickland standard will be also applied to Stone's claim.

"'The decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in any criminal case." Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996) (citation omitted). "A defense lawyer in a criminal case has the duty to advise his client fully on *whether a particular plea to a charge appears to be desirable."* Id. (quoting ABA's Model Code of Professional Responsibility, Ethical Considerations 7-7 (1992)) (emphasis in the original).

In this Circuit, a defendant "is entitled to the benefit of his attorney's superior experience and training in criminal law," to provide the defendant with a meaningful basis for deciding

12

whether to accept a plea offer. Smith v. United States, 348 F.3d 545, 553 (6th Cir. 2003).

In Smith, the Sixth Circuit elaborated on counsel's obligations in the context of a guilty plea.

> The decision to plead guilty--first, last, and always--rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction. On the other hand, <u>the attorney has a clear obligation to fully inform her client of the available options. We have held that the failure to convey a plea offer constitutes ineffective assistance,</u> *see Griffin*, 330 F.3d at 734, <u>but in the context of the modern criminal justice system, which is driven largely by the Sentencing Guidelines, more is required. A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available.</u> In a system dominated by sentencing guidelines, <u>we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.</u> . . . The criminal defendant has a right to this information, just as he is entitled to the benefit of his attorney's superior experience and training in the criminal law.

348 F.3d at 552-53 (emphasis added).

Where the proof establishes an attorney failed to review and advise his/or her client on sentencing options, the defendant is not necessarily required to present proof that he would have accepted a different offer. Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003).

> Although some circuits have held that a defendant must support his own assertion that he would have accepted the offer with additional objective evidence, we in this circuit have declined to adopt such a requirement. Nevertheless, it has been held, as the district court recognized, that a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer. It follows that the district court did not err in relying on such a disparity, along with the unrefuted testimony of the petitioner, to support its conclusion that habeas

13

relief was required in this case.

Id. at 737-38 (quoting <u>Dedvukovic v. Martin</u>, 36 Fed.Appx. 795, 798 (6th Cir. 2002) (unpublished)).

Here, initially Horst advised Stone not to accept a twelve-year plea offer in expectation that he would receive a two to six years sentence from the sentencing judge. Yet, at the time of the plea agreement, that resulted in Stone's sentence, Horst admits that he declined to "suggest" which sentencing option was preferable. (Docket Entry No. 10, Addendum 8A Conviction Transcript, at pp. 59-60). Horst also failed to advise Stone about the merits of the plea offer so that Stone could make a meaningful decision on whether to accept the State's plea offer. Horst's admissions of his failures to evaluate and advise on the plea offer that resulted in Stone's sentence establish ineffective assistance of counsel under <u>Smith</u>. In addition, the Tennessee Court of Criminal Appeals opinion reflects that Petitioner was initially advised to reject a twelve-year plea offer in expectation of a two to six years sentence. The disparity between the expected sentence of two to six years and the actual sentence of twenty years also causes the Court to conclude counsel's assistance on the sentencing issue was ineffective. In this context, the Court concludes that under <u>Smith</u>, Stone has proved ineffective assistance and prejudicial performance from his counsel. 348 F.3d at 552-53.

### 2. Voluntariness of Plea

Distinct from defense counsel's obligations to ensure a voluntary plea, the state trial judge also has an independent constitutional obligation to ensure that a defendant's plea of guilty is entered voluntarily, knowingly and intelligently. <u>Boykin</u>, 395 U.S. at 242-44. State trial courts are required under the Due Process Clause of the Fourteenth Amendment to advise state

14

defendants of his rights to ensure a voluntary and knowing plea of guilty. Id. at 242.

The Constitution requires that a defendant must be informed so as to have a "sufficient awareness of the relevant circumstances and likely consequences" of his guilty plea, Brady v. United States, 397 U.S. 742, 748 (1970) and "a full understanding of the direct consequences of a plea." United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990). Such awareness ensures that the plea represents a voluntary and intelligent choice among the alternatives. North Carolina v. Alford, 400 U.S. 25, 31 (1970); see King v. Dutton, 17 F.3d 151, 153-154 (6th Cir. 1994) (discussing a trial judge's obligation under Boykin with regard to advising a defendant on the consequences of accepting a guilty plea and collecting cases).

The validity of a guilty plea is determined under the totality of the circumstances. Brady, 397 U.S. at 749. Where the state record is silent, the state is given the opportunity to establish a voluntary and intelligent plea. United States v. Hoffman, 982 F.2d 187, 191 (6th Cir. 1992). "[I]f a defendant shows an insufficiency in the transcript, Boykin does not automatically require that the conviction be vacated but instead requires that the State prove, by evidence extrinsic to the transcript, that the plea was nonetheless voluntary and intelligent." Pitts v. United States, 763 F.3d 197, 200 (6th Cir. 1985). The critical question is whether the petitioner's allegations, when viewed against the record of the plea hearing, are so "palpably incredible" or so "patently frivolous" as to warrant summary dismissal without a hearing. Blackledge v. Allison, 431 U.S. 63, 76 (1977). Here, the state post-conviction evidentiary hearing record provides an adequate basis for resolution of Petitioner's claim.

As to sentencing issues, the defendant must be informed of the maximum possible sentence. Riggins v. McMackin, 935 F.2d 790, 796 (6th Cir. 1991); Hart v. Marion Corr. Inst,

15

927 F.2d 256, 259 (6th Cir. 1990) (granting relief where the plea colloquy did not establish that defendant was clearly made aware of the maximum possible sentence). A district court stated that a "likely consequence" requiring discussion by a trial court is "whether a sentence imposed pursuant to a guilty plea is consecutive to or concurrent to another sentence." Holtgreive v. Curtis, 174 F.Supp.2d 572, 585 (E.D. Mich. 2001) ( citing Hart and two unpublished Sixth Circuit opinions), but this requirement does not apply to whether federal and state sentences will be consecutive or concurrent. Ferguson, 918 F.2d at 630.

Where a plea is premised upon an expectation of a more lenient sentence, the plea is not invalidated if the judge imposes a harsher sentence than expected. Mabry v. Johnson, 467 U.S. 504, 507 n.5 (1984); Carwile v. Smith, 874 F.2d 382, 385-86 (6th Cir. 1989). Likewise, Petitioner's expectations about the sentence are not grounds for invalidating the plea agreement, Spinelli v. Collins, 992 F.2d 559, 561 (5th Cir. 1993); Stout v. United States, 508 F.2d 951, 953 (6th Cir. 1975), unless there was a gross error by counsel on parole eligibility, Sparks v. Sowders, 852 F.2d 882, 885 (6th Cir. 1988) or a substantial disparity in the plea offer and the sentence. See Griffin, 330 F.3d at 738.

At the plea hearing, the key provision in Stone's plea agreement was that he could be sentenced consecutively on three counts. To be sure, at some points, the plea transcript reflects different and conflicting understandings by the court and the prosecutors on Stone's sentencing options. Initially, the trial judge stated and Stone agreed that under the plea agreement "all sentences to run concurrently." (Docket Entry No. 10, Addendum 2, Plea Transcript at pp. 4-5). Stone's plea agreement, however, was that four sentences would be concurrent. Id. at Addendum 1A at p. 17. The handwritten plea petition is silent on "consecutive" sentences. At

sentencing, one State prosecutor erroneously prepared a judgment for all sentences to be served concurrently.

Yet, considering the totality of the circumstances, as required by <u>Brady</u>, the Court concludes that Stone clearly understood that his maximum sentence could be 36 years and that for the three sentences, the trial court could impose a consecutive sentence that was consistent with the plea agreement. The initial misunderstanding on concurrent sentences was clarified. The Court concludes that the plea colloquy is sufficient under <u>Boykin</u>. The cause for the involuntary plea was not any act or omission in the trial judge's plea colloquy.

Accordingly, the Court concludes that the Respondent's motion for summary judgment should be granted in part and denied in part. The Petitioner's motion for summary judgment should be granted as to Petitioner's ineffective assistance of counsel claim, but should otherwise be denied. The writ shall issue, and the State will have 120 days to retry the Petitioner.

An appropriate Order is filed herewith.

**ENTERED** this the 3rd day of January, 2006.

                                                    WILLIAM J. HAYNES, JR.
                                                    United States District Judge

17

Case 3:04-cv-00314   Document 25   Filed 01/03/06   Page 17 of 17 PageID #: 171